**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

**PEPSICO, INC.,**

                 **Plaintiff,**                           **REPORT AND**
                                                               **RECOMMENDATION**

                 **-against-**                              **11-CV-0425 (RRM) (ALC)**

**F & H KOSHER SUPERMARKET, INC., d/b/a**
**SCHWARTZ KOSHER SUPERMARKET, d/b/a**
**SCHWARTZ SELF SERVICE GROCERY, d/b/a**
**SCHWARTZ GROCERY STORE,**

                 **Defendant.**
-------------------------------------------------------------------X

**CARTER, UNITED STATES MAGISTRATE JUDGE:**

    Plaintiff PepsiCo, Inc. ("PepsiCo"), filed its complaint in the instant action on January 28, 2011, alleging that Defendant F & H Supermarket, Inc., d/b/a Schwartz Kosher Supermarket, d/b/a Schwartz Self Service Grocery, d/b/a Schwartz Grocery Store ("Schwartz"), sold within the United States soft drinks bearing the PEPSI marks that were manufactured, bottled, and meant for sale only in Israel and are materially different from the soft drinks PepsiCo sells in the United States under the PEPSI marks. (Declaration of Anthony DiPaolo ("DiPaolo Decl.") ¶ 2; Compl. ¶¶ 12-16.) PepsiCo alleged that Schwartz's unauthorized sales were likely to cause consumer confusion and dilution. (Compl. ¶¶ 18, 31-36, 38-39.) On March 11, 201l, Plaintiff moved for default against Defendant because it failed to respond to the complaint or appear in the action. On March 15, 2011 and June 6, 2011, the Honorable Roslynn M. Mauskopf, United States District Judge, referred to me Plaintiff's default motion. For the reasons set forth below, I respectfully recommend that the Court grant Plaintiff's motion for a default judgment and award injunctive relief, attorney's fees, and costs as described below.

1

## I. Background

This is an action arising under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, *et seq.* ("the Lanham Act"). Plaintiff PepsiCo is engaged in the manufacture, distribution, and marketing of soft drinks throughout the United States. (Compl. ¶ 5.) Plaintiff asserts that it is the owner of, among other things, trademark registrations issued by the United States Patent and Trademark Office ("USPTO") for marks used in connection with the sale and advertising of PEPSI soft drinks, namely, PEPSI, PEPSI-COLA, a distinctive red, white, and blue logo, and combinations of variations on this logo with PEPSI and PEPSI-COLA ("PEPSI marks"). (*Id*. ¶¶ 6-8.) Plaintiff alleges that the PEPSI marks are "incontestible" within the meaning of 15 U.S.C. § 1065 and constitute conclusive evidence of the validity of the PEPSI marks, of its ownership of the PEPSI marks, and of its exclusive right to use the PEPSI marks in commerce in accordance with 15 U.S.C. §§ 1065, 1115(b). (*Id*. ¶ 7.) Plaintiff alleges that its authorized bottlers have sold billions of dollars worth of soft drinks under the PEPSI marks throughout the United States and that it has spent hundreds of millions of dollars to advertise and promote the PEPSI products under the PEPSI marks. (*Id*. ¶ 8.) Plaintiff asserts that because of its continuous use of the trademarks through extensive sales, promotion, and advertising, the PEPSI marks have become exceedingly famous and represent valuable goodwill. (*Id*. ¶¶ 9-10.)

Plaintiff's complaint asserts that PEPSI products are distributed in the United States by its authorized bottlers pursuant to Exclusive Bottling Agreements, which authorize those local bottlers to distribute PEPSI products in their respective territories. (*Id*. ¶ 11.) Plaintiff alleges that Defendant, without Plaintiff's authorization or consent, sold within the United States soft drinks manufactured in Israel bearing the PEPSI marks ("Israeli product"), which are subject to a bottling agreement that permits sales of the Israeli product only in Israel,

but does not authorize or intend for the exportation into, or sale or distribution in, the United States. (*Id*. ¶¶ 12-15; *see also* DiPaolo Decl. ¶ 2.) Plaintiff further alleges that the Israeli product is materially different from the authorized PEPSI products bottled and sold in the United States in various respects, including, but not limited to:

> (1) the Israeli product does not comply with the labeling regulations of the United States Food and Drug Administration ("FDA") or the labeling standards followed by Plaintiff and its authorized bottlers in the United States;
>
> (2) Defendant's sale of the Israeli product outside Plaintiff's authorized distribution channels does not permit Plaintiff to properly and sufficiently exercise quality control over the Israeli product;
>
> (3) there is a risk of leakage, loss of carbonation and general deterioration to the Israeli product due to the hazards and delay inherent in shipping the product outside its designated area of sale;
>
> (4) the Israeli product's packaging bears labels in Hebrew;
>
> (5) Defendant's marketing of the Israeli product conflicts with the marketing plans of Plaintiff and its authorized bottlers; and
>
> (6) some of the Israeli product bears registered trademark notices, but does not bear a statutory notice of a United States trademark registration and might be interpreted as limiting Plaintiff's right to obtain relief in accordance with Section 29 of the Lanham Act, 15 U.S.C. § 1111.

(Compl. ¶ 16.)

Plaintiff alleges that Defendant's unauthorized sales are likely to cause consumer confusion, mistake, or deception as to the source of origin, sponsorship, or approval of

Defendant's Israeli product, because purchasers in the United States are likely to believe that Plaintiff authorizes and controls the sale of Defendant's Israeli product in the United States. (*Id*. ¶ 18.) Plaintiff asserts that Defendant's acts have injured or are likely to injure the value of Plaintiff's goodwill with consumers, and its business reputation and relations with bottlers and retailers in the United States, by creating confusion about, and dissatisfaction with, its PEPSI products, thereby causing it irreparable harm. (*Id*. ¶¶ 19-20, 23.)

Before serving the complaint on Defendant, Plaintiff contacted Defendant multiple times requesting that it refrain from selling Israeli PEPSI. (Declaration of Phillip Barengolts "Barengolts Decl." ¶¶ 2-8, Exh. A-C.) Defendant failed to respond to Plaintiff's inquiries and failed to stop selling Israeli PEPSI. (Barengolts Decl. ¶¶ 2-8.) Plaintiff filed a request for an entry of default pursuant to Federal Rule of Civil Procedure 55(b)(2) on March 11, 2011, which was entered by the Clerk of the Court on March 15, 2011. In its motion for a default judgment, Plaintiff seeks an order granting a permanent injunction against Defendant and reasonable attorney's fees and costs incurred in the action. It does not request monetary or statutory damages.

**II.     Standard of Review**

Fed. R. Civ. P. 55 sets forth a two-step process in which first a default, and then a default judgment, is entered. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Fed. R Civ. P. 55(a) by noting the party's default on the clerk's record of the case. *See id.* After a default has been noted, the court enters a default judgment against a party that has failed to plead or otherwise defend an action brought against it. *See* Fed. R. Civ. P. 55(b)(2).

While the defaulting party has essentially admitted to all the allegations found in the complaint, it remains the movant's burden to show that the uncontroverted facts establish liability on the defaulting party. *See Leider v. Ralfe*, No. 01-CV-3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (citing *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)). A plaintiff is entitled to all reasonable inferences of the evidence offered to the court. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

A defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages. *See Finkel v. Romanowicz*, 577 F.3d 79, 83 n. 6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). After assessing liability, the court must then conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). In conducting an inquiry, the court need not hold a hearing "as long as it [has] ensured that there [is] a basis for the damages specified in the default judgment." *Id.* The court may rely on affidavits or documentary evidence when evaluating the fairness of the damages requested. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Chun Jie Yin v. Kim*, No. 07-CV-1236, 2008 WL 906736, at *2 (E.D.N.Y. Apr. 1, 2008) (collecting cases). Here, the Court is presented with the question whether PepsiCo is entitled to permanent injunctive relief.

### III. Liability

Plaintiff alleges that Defendant's unauthorized sale of the Israeli product constitutes trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114), unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and the common law of the State of New York, and trademark dilution in violation of Section 43(c) of

the Lanham Act (15 U.S.C. § 1125(c)) and New York General Business Law Section 360-1. (Compl. ¶¶ 17-39.)

### A. Trademark Infringement

Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), defines trademark infringement as the use without consent of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" To prevail on the merits of a trademark infringement claim, a plaintiff must prove that (1) it has legally protectable trademarks, and (2) the defendant's use of the trademarks creates a likelihood of confusion among customers. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006); *Time, Inc. v. Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999); *Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, No. 08-CV-0068, 2010 WL 2133937, at *4 (E.D.N.Y. Mar. 11, 2010); *Johnson & Johnson Consumer Cos., Inc. v. Aini*, 540 F. Supp. 2d 374, 388 (E.D.N.Y. 2008). Here, Plaintiff's certificates of registration with the USPTO for the PEPSI marks constitute "prima facie evidence that the mark[s] [are] registered and valid, … that the registrant owns the mark[s], and that the registrant has the exclusive right to use the mark[s] in commerce." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999); *see also* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark[.]") I turn to the question of whether Defendant's misuse of the trademarks creates a likelihood of confusion among customers.

Plaintiff has established that the Israeli products constitute "gray market goods," i.e., "goods made by a foreign manufacturer, legitimately sold abroad under a particular trademark[,] ...

imported into the United States and sold in competition with goods of the owner of [the United States] trademark rights in the identical mark." *Helene Curtis v. Nat'l Wholesale Liquidators, Inc.*, 890 F.Supp. 152, 154 (E.D.N.Y. 1995) (internal quotation marks omitted, citation omitted, bracketed text in original). As a general rule, "trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner," *Polymer Tech. Corp. v. Mimran ( "Polymer I" )*, 975 F.2d 58, 61 (2d Cir. 1992), for "there is no possibility of deception or confusion." *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1023 (2d Cir. 1989) ("The unauthorized sale of a genuine trademarked product does not in itself constitute trademark infringement." (citations omitted)). However, "[b]ecause gray market goods are often similar in composition and appearance to their United States counterparts, and because the manufacturer of the gray market goods is often related in some manner to the United States trademark holder, it is often difficult to determine whether such goods are genuine." *Helene Curtis*, 890 F.Supp. at 157. In order to evaluate whether the goods are genuine in the area of gray goods, the Second Circuit has established two methods to help lower courts determine if the defendant's misuse of the trademark creates a likelihood of confusion: the "quality control test" and the "material differences test." *Id.* at 157-58.

### (1) Quality Control Test

"Goods ... that do not meet the trademark owner's quality control standards will not be considered genuine goods, and their sale will constitute trademark infringement." *Polymer Technology Corp. v. Mimran ("Polymer II")*, 37 F.3d 74, 78 (2d Cir. 1994), because the sale of such goods may mislead consumers into believing that the trademark owner had approved the goods for domestic sale. *See Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 72 (2d Cir. 1987); *El Greco Leather Prods. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d

7

Cir. 1986) ("One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of goods manufactured and sold under the holder's trademark."); *see also Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 639 (1st Cir. 1992). The complaint alleges that the unauthorized distribution of the Israeli product: (1) prevents Plaintiff from placing "drink by" notice dates on the Israeli product; (2) makes monitoring the Israel product for proper shipment and storage conditions impossible; (3) precludes Plaintiff's proper arrangement of retail Israel product displays; and (4) prevents Plaintiff from rotating stale, damaged or substandard quality Israeli product off retail sales. (Compl. ¶ 16(c).) Thus, I find that Plaintiff has sufficiently established that Defendant's sale of the Israeli product outside of Plaintiff's authorized distribution channels and designated area does not allow Plaintiff to exercise sufficient quality control over the Israeli product.

### (2) Material Differences Test

The sale of gray market goods is likely to cause confusion among consumers if the goods (1) are not authorized to be sold in the United States and (2) are materially different from the goods that are authorized for sale in the United States market. *See Original Appalachian Artworks*, 816 F.2d at 73; *Zip Int'l Group, LLC v. Trilini Imps., Inc.*, No. 09-CV-2437, 2011 WL 2132980, at *4 (E.D.N.Y. May 24, 2011); *Johnson & Johnson Consumer Cos.*, 540 F. Supp. 2d at 384-85; *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 308 (S.D.N.Y. 2007). The complaint alleges that pursuant to an exclusive bottling agreement, the Israeli product was authorized for sale only in Israel, yet, Defendant sold its product within the United States in the same competitive market as Plaintiff's product. (Compl. ¶¶ 12-13.) Plaintiff has satisfied the first prong of the test.

8

In the context of gray market goods, the threshold for materiality is generally quite low. *See Dan-Foam A/S*, 500 F. Supp. 2d at 312. The Second Circuit has recognized that "the existence of any difference between the registrant's product and the allegedly infringing gray good that consumers would likely consider to be relevant when purchasing a product creates a presumption of consumer confusion." *Helene Curtis*, 890 F. Supp. at 159 (quoting *Societe Des Produits Nestle*, 982 F.2d at 636). In the present case, Plaintiff's authorized domestic PEPSI products appear to differ materially from the Israeli product. (Compl. ¶ 16.) Unlike the packaging and labeling on the authorized PEPSI products, the labeling on the Israeli product does not comply with the FDA regulations or the labeling standards followed by Plaintiff and its authorized bottlers in the United States. *See*, *e.g.*, *Helene Curtis*, 890 F. Supp at 159 (granting injunction against importation of unauthorized products because, among other things, the goods failed to comply with FDA labeling requirements). The use of Hebrew on the Israeli product's packaging is also a material difference. *See PepsiCo Inc. v. Reyes*, 70 F. Supp. 2d 1057, 1059 (C.D. Cal. 1999) (finding Spanish labels on Mexican gray market PEPSI products to be a material difference); *Original Appalachian Artworks*, 816 F.2d at 70 (finding Spanish "adoption papers" of gray market Cabbage Patch dolls to be a material difference).

By demonstrating that the Israeli product sold by Defendant materially differed from Plaintiff's authorized products in labeling, packaging, and marketing, I find that Plaintiff has established that the Israeli product is "likely to cause confusion . . . among . . . consumers to the detriment of [Plaintiff]." *PepsiCo Inc.*, 70 F. Supp. 2d at 1060.

### B. Unfair Competition

PepsiCo's complaint also established its claims for unfair competition under Section 43 of the Lanham Act and New York law. (Compl. ¶¶ 25-26, 28-29.) Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) prohibits:

> "[a]ny person" from using in commerce, in connection with any goods or services, or any container for goods, . . . any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

Unfair competition claims under Section 43(a) of the Lanham Act and New York common law are governed by the same standards as claims under Section 32 of the Lanham Act, except the common law requires a showing of bad faith or intent. *See Louis Vuitton Malletier*, 454 F.3d at 114; *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997) (holding that "state law claim of unfair competition is not viable without a showing of bad faith" (italics removed)); *Arrow Fastener Co., Inc. v. Stanley Works*, 59 F.3d 384, 390 n. 4 (2d Cir. 1995); *Zip Int'l Group*, 2011 WL 2132980, at *8 (agreeing that the state law claim of unfair competition shares common elements with the Lanham Act claim of trademark infringement); *Krasnyi Oktyabr, Inc. v. Trilini Imps.*, 578 F. Supp. 2d 455, 467 (E.D.N.Y. 2008); *GMA Accessories, Inc. v. Croscill, Inc.*, No. 06-CV-6236, 2008 WL 591803, at *3 n. 2 (S.D.N.Y. Mar. 3, 2008) ("The legal standards governing § 1114(1)(a) and § 1125(a) claims are identical."). Because PepsiCo has established trademark infringement under Section 32 of the Lanham Act by showing that Defendant's misuse of the PEPSI marks is likely to confuse customers and the record shows bath faith on part of Defendant, I find that Defendant is also liable for unfair competition under both federal and state law.

## C. Trademark Dilution

Plaintiff asserts claims of trademark dilution both under the Lanham Act and under New York law. The Federal Trademark Dilution Act of 1995 ("FTDA"), as amended effective October 6, 2006 by the Trademark Dilution Revision Act ("TDRA"), "entitles the owner of a famous, distinctive mark to an injunction against the user of a mark that is 'likely to cause dilution' of the famous mark." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765, 766 (2d Cir. 2007) (citing 15 U.S.C. § 1125(c)(1)). To establish a violation of the Act, a plaintiff must show that: (1) its mark is famous; (2) the defendant's use of the mark is made in commerce; (3) the defendant used the mark after the mark was famous; and (4) the defendant's use of the mark is likely to dilute the quality of the mark by blurring or tarnishment. *See Gap, Inc. v. G.A.P. Adventures Inc.*, No. 07-CV-9614, 2011 WL 2946384, at *16 (S.D.N.Y. Jun. 24, 2011); *Pan Am. World Airways, Inc. v. Flight 001, Inc.*, No. 06-CV-14442, 2007 WL 2040588, at *18 (S.D.N.Y. Jul. 13, 2007). Whether a mark or trade name is likely to cause dilution by blurring depends on a number of factors including the similarity between the mark and the famous mark, the distinctiveness and degree of recognition of the famous mark, and whether the user of the mark or trade name intended to create an association with the famous mark. 15 U.S.C. § 1125(c)(2)(B). The New York statute similarly provides for injunctive relief in cases where there is a "[l]ikelihood ... of dilution of the distinctive quality of a mark or trade name." N.Y. Gen. Bus. Law § 360-l. A plaintiff must demonstrate ownership of a distinctive mark and the likelihood of dilution of that mark. *See The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 966 (2d Cir. 1996).

In the instant matter, PepsiCo has established that: (1) PepsiCo first registered its marks in 1967 (Compl. ¶¶ 6-7), and its marks are famous throughout the United States and the world (*Id.*

¶¶ 8- 10, 31); (2) Defendant is making use of the mark in commerce by selling the unauthorized Israeli product (*Id*. ¶¶ 12-15); (3) Defendant's use began after the PEPSI marks became famous (*Id*. ¶¶ 8-15); and (4) Defendant's sale of Israeli product is likely to dilute the quality and diminish the capacity of the PEPSI marks to identify and distinguish PepsiCo's authorized goods and services. (*Id*. ¶¶ 31-36, 38-39.) The record here plainly shows that Defendant's continued unauthorized use of the actual PEPSI marks creates a risk of dilution by blurring. Accordingly, I find that Defendant is liable for trademark dilution under both federal and state law entitling it to injunctive relief.

## IV. Damages

### A. Injunctive Relief

Plaintiff seeks to permanently enjoin Defendant from further importation, distribution or sale of the Israeli product in the United States. The Court may issue an injunction on a motion for default judgment if the moving party shows that it is entitled to injunctive relief under the applicable statute and it meets the prerequisites for the issuance of an injunction. *Yash Raj Films (USA), Inc. v. Adda Rong, Inc.*, No. 08-CV-2280, 2010 WL 1270013, at *7 (E.D.N.Y. Mar. 12, 2010).

Section 34(a) of the Lanham Act provides courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the Court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a); *see also Phillip Morris U.S.A. Inc. v. Marlboro Express*, No. 03–CV–1161, 2005 WL 2076921, at *5 (E.D.N.Y. Aug. 26, 2005). A permanent injunction is warranted where a party has succeeded on the merits, *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006), and establishes:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Salinger v. Colting*, 607 F.3d 68, 77 (2d. Cir. 2010) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L.Ed.2d 641 (2006)); *see also U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, --- F.Supp.2d ----, No. 09-CV-9476, 2011 WL 1842980, at *19-20 (S.D.N.Y. May 13, 2011) (reasoning that "*Salinger* suggest that [trademark infringement] cases should be analyzed under the standards for injunctive relief articulated by the Supreme Court in *eBay Inc*.").

Because Defendant's default constitutes an admission of its liability and Plaintiff's well pleaded allegations are deemed true, Plaintiff has achieved actual success on the merits of its Lanham Act claims. Moreover, "in a trademark infringement case, proof of a likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004) (citing *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988)). The record establishes that in the absence of an injunction, Defendant will continue to infringe the PEPSI marks, and that such use is likely to mislead consumers and damage Plaintiff's reputation as symbolized by the PEPSI marks. (Compl. ¶¶ 12-15, 18-23, 31-36, 38-39.)

Plaintiff has also established that there is no adequate remedy available under the law. Defendant failed to respond to any of Plaintiff's letters demanding that it stop using the PEPSI marks, (Barengolts Decl. ¶¶ 2 - 9 and Exs. A - D), and failed to amicably resolve the dispute. (Barengolts Decl. ¶ 9.) If Defendant is allowed to continue to use the PEPSI marks, it may adversely affect Plaintiff's reputation and business in ways that may be difficult to quantify and

that will not lend themselves easily to monetary compensation. *See Philip Morris U.S.A.*, 2010 WL 2133937, at *17.

Balancing the relative hardships also favors granting Plaintiff a permanent injunction. Absent injunctive relief, Plaintiff faces the threat of irreparable harm to the reputation and good will associated with the PEPSI mark. Further, the public interest would benefit from the injunction because it would protect the public from deception and from the lack of quality control exercised by the Israeli product. *See Unilever Supply Chain, Inc. v. I & I Wholesale Food Inc.*, No. 10-CV-1077, 2011 WL 1113491, at *6 (E.D.N.Y. Feb. 17, 2011); *New York City Triathlon LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).

As set forth above, Plaintiff has established a likelihood of confusion and the public interest would not be disserved by an injunction that will reduce the risk of confusion. I therefore conclude that all factors favor the issuance of the requested permanent injunction and respectfully recommend that the Court enter such an injunction.

### B. Attorney's Fees

Plaintiff requests attorney's fees incurred in the prosecution of this matter. The Lanham Act authorizes the award of attorney's fees to prevailing parties in "exceptional cases." 15 U.S.C. 1117(a). A case is "exceptional" in instances where there is a "willful infringement." *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003). Here, I find that Defendant's infringing acts are willful and are sufficient to justify an award of attorney's fees. Plaintiff tried numerous times to contact Defendant and each time, Defendant evaded contact. Defendant ignored PepsiCo's efforts to address its concerns without litigation prior to filing this complaint and instead continued to infringe upon PepsiCo's marks. (Barengolts Decl. ¶¶ 2 - 10, and Exs. A - D.)

A party seeking an award of attorney's fees must support that request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983); *see also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998). Fee applications that do not contain such supporting data "should normally be disallowed." *Carey*, 711 F.2d at 1154. The court has a great deal of discretion in awarding attorney's fees and can deduct hours from the calculation if it finds that the hours charged are superfluous or unreasonable. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997). District courts "should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *See Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal citation and quotation marks omitted).

Plaintiffs have submitted an affidavit by their attorney in support of a request for attorney's fees. (Declaration of Jonathan S. Jennings, dated June 13, 2011.) The affidavit includes contemporaneous billing records detailing the tasks undertaken and the time spent by the attorneys in prosecuting Plaintiff's claims. The hourly rates are in line with the rates charged by counsel in this district. Therefore, I recommend awarding Plaintiff $18.440.59 for attorney's fees and related expenses.

### V.  Conclusion

For the foregoing reasons, I respectfully recommend that the Court grant PepsiCo's request for a default judgment against Defendant. I further recommend that F & H Kosher Supermarket, Inc., d/b/a Schwartz Kosher Supermarket, d/b/a Schwartz Self Service Grocery, d/b/a Schwartz Grocery Store, and its officers, agents, servants, employees, successors and assigns, and all others in active concert or participation with them, be permanently enjoined and restrained from

the importation into, and the dealing, marketing, sale or distribution in the United States of soft drinks manufactured or bottled in Israel bearing PepsiCo's famous federally registered trademarks PEPSI, PEPSI-COLA, the distinctive red, white and blue logo, and combinations of variations on this logo with PEPSI and PEPSI-COLA. I also recommend that the Court award Plaintiff $18.440.59 for attorney's fees and related expenses pursuant to 15 U.S.C. § 1117(a).

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 6 and 72 of the Fed. R. Civ. P., the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation on ECF. Extensions of time to file objections should be directed to Judge Mauskopf. Failure to file timely objections will preclude appellate review of any order of judgment that will be entered. Counsel for Plaintiff shall serve a copy of this Report and Recommendation on Defendant by certified mail, within three days of receipt, and should file proof of such service on ECF.

**SO ORDERED**

**Dated: August 26, 2011**
       **Brooklyn, New York**

/s/ ALC
_____
**HONORABLE ANDREW L. CARTER, JR.**
**UNITED STATES MAGISTRATE JUDGE**